*VIA ECF AND E-MAIL*                                                           19, 2022

```
┌─────────────────────────────────┐
│ USDC SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY FILED             │
│ DOC #: _____            │
│ DATE FILED: __09/26/2022__       │
└─────────────────────────────────┘
```

The Honorable Analisa Torres, U.S.D.J.
United States District Court, S.D.N.Y.
500 Pearl Street
New York, New York 10007

Re:     *U.S. Bank National Association v. Mattone Group Jamaica Co., LLC, et al.*,
        1:21-CV-09342 (AT) (S.D.N.Y.)

# MEMO ENDORSED

Dear Judge Torres:

Pursuant to Federal Rule of Civil Procedure 37(a), Local Rule 37.2, and Paragraph II.C of the Court's Individual Practices, counsel for Defendant Mattone Group Jamaica Co., LLC ("Mattone" or "Borrower") and Plaintiff U.S. Bank National Association, as Trustee on Behalf of the Registered Holders of GS Mortgage Securities Corporation II, Commercial Mortgage Pass Through Certificates, Series 2012-GCJ9 ("Lender" or "Plaintiff"), acting by and through special servicer, Rialto Capital Advisors LLC ("Rialto"), submit this joint letter describing a discovery dispute and requesting a pre-motion conference before the Court.

## Defendant's Position:

**Background:** In 2012, Mattone borrowed $81 million from Jefferies Loancore LLC ("Original Lender"), secured by, among other instruments, a mortgage encumbering the Jamaica Center Mall in Queens, New York (the "Jamaica Center"). Located in the Jamaica Center Business Improvement District, the Jamaica Center is home to SUNY Queens, a movie theater, and many national and local retailers and restaurants. The instant dispute began during the darkest days of the COVID-19 pandemic when government regulations and public health mandates required the closure of Jamaica Center. At that time, Borrower was in full compliance with all of its obligations under the Loan Agreement but, with no economic activity occurring at the mall, Borrower had insignificant cash flow to support its monthly mortgage payments between May 2020 and November 2020. Since this time, Borrower has, in good faith, attempted to come current or otherwise reach a compromise with Lender. Plaintiff has refused these offers, accelerated the full amount due and owing under the Loan, and initiated this foreclosure action.

In the instant dispute, Plaintiff has not complied with its discovery obligations pursuant to Fed. R. Civ. P. 26(b)(1) by (i) failing to produce documents responsive to Borrower's discovery demands; (ii) failing to produce and prepare a witness with knowledge for a Rule 30(b)(6) deposition; and (iii) waiting until the end of discovery to provide an accounting of amounts due and owing that had been requested since January 2022. Plaintiff's inaction has prevented Borrower from receiving information critical to its case, prejudiced Borrower's rights during discovery, increased litigation costs, and prolonged the litigation. Plaintiff has offered no meaningful explanation for its delays and has otherwise acknowledged Mattone's entitlement to the materials in discovery. For this reason, Borrower also seeks sanctions against Lender for its bad faith tactics in discovery by ordering the payment of Borrower's reasonable expenses, including attorney's fees, caused by Lender's failure to comply with its discovery obligations pursuant to Fed. R. Civ. P. 37 (c)(1)(A).

**Lender Fails to Produce Documents.** Federal Rule of Civil Procedure 34 requires parties to produce documents and other tangible objects that are within the party's "possession, custody or

control." Fed. R. Civ. P. 34(a)(1).  Courts in this district interpret Rule 34 "to require production if the party has the practical ability to obtain the documents from another, irrespective of his legal entitlement." *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 169 F.R.D. 493, 530 (S.D.N.Y. 1996).  Since at least May 2, 2022, Borrower has sought the "complete Loan File," which the parties understood to include all documents relevant to the Jamaica Center Loan within the possession, custody and control of Rialto, as Special Servicer.  Specifically, Javier Callejas, Lender's 30(b)(6) designee, testified that the Loan File should include, but is not limited to, property-specific reports (e.g. appraisals, inspections, ASRs), all correspondence with Borrower (including pre-foreclosure notices, proof of mailings, default and acceleration notices), correspondence between Wells Fargo and Rialto regarding the Jamaica Center property (including in relation to bring current or payoff demand statements and Borrower's initial request for relief from COVID-related hardship, ARCAN system logs documenting the status of Borrower's requests relating to the property, and any documents pertaining to cash management or advances made by Wells Fargo or Rialto.  Without question, these documents are relevant to the dispute, including Borrower's counterclaim, are subject to discovery, and Plaintiff has, again, acknowledged that Mattone is entitled to the materials and that Plaintiff possesses the materials.  To date, Plaintiff has not provided this information, however.  During the Rule 30(b)(6) deposition of Javier Callejas on August 11, Mr. Callejas testified these documents exist or could be prepared quickly, and that he would prepare such documents.  *See* Deposition Transcript of Javier Callejas ("Tr.") at 63:14-64; 105:13-16, 218:1-11.  Lender, therefore, has the "practical ability" to obtain and produce the documents but simply refuses to provide Borrower with the materials.  Lender's repeated refusal to produce these documents violates Rule 34, and Lender should be compelled to produce these documents.

**Lender Fails to Produce a Competent Rule 30(b)(6) Witness.**  Plaintiff also failed to produce a witness with knowledge pursuant to Rule 30(b)(6).  "Under Rule 30(b)(6), when a party seeking to depose a corporation announces the subject matter of the proposed deposition, the corporation must produce someone familiar with that subject." *See Reilly v. Natwest Markets Grp. Inc.*, 181 F.3d 253, 268 (2d Cir. 1999).  After Borrower made several attempts to confirm Lender's 30(b)(6) witness over several months, Lender finally agreed to produce Mr. Callejas on August 11, 2022— the Court-ordered discovery deadline at that time.  When Mr. Callejas appeared for his deposition, he was not prepared to answer several noticed topics.  Mr. Callejas did, however, identify a number of documents responsive to Borrower's document requests that Lender had failed to produce.  By failing to provide a 30(b)(6) witness that could "give complete, knowledgeable and binding answers" on its behalf, Lender failed to satisfy its obligations under Rule 30(b)(6).  *Securities & Exchange Comm'n v. Morelli*, 143 F.R.D. 42, 45 (S.D.N.Y.1992) (quotations omitted).  Lender should be compelled to produce a witness with knowledge, and Lender should bear Borrower's expenses for the renewed deposition and counsel's time to prepare for and conduct the deposition.

**Lender's Dilatory Tactics Have Prejudiced Borrower's Rights in Discovery and Caused Borrower Significant Expense.**  Since at least May 2, 2022, Borrower has sought in discovery (i) a "bring current statement;" (ii) payoff statements for the Loan; and (iii) the information used to calculate the amounts represented in these documents.  Indeed, Borrower has requested Lender prepare a "bring current" statement identifying all outstanding amounts due and owing under the Loan—which, again, Borrower is entitled to receive—before the instant suit was even filed.  On January 24, 2022, Rialto provided an Excel spreadsheet that it claimed to contain a clear and correct statement of how much Borrower owed to bring the Loan current.  ("January Bring Current Statement").  Not only was Lender's demand in the bring current statement over $14 million even

September 19, 2022
Page Three

though the Borrower only allegedly owes $2,396,521.68, Lender's demand erroneously included payments and advances that had already been paid by Borrower, and Lender admitted to the error. Borrower repeatedly requested clarifications and corrections to the January Bring Current Statement, but Lender has refused to provide them.  Instead, Lender compounded the problem by producing incomplete and inaccurate statements in April 2022, which it refuses to correct.

Not only were Lender's two bring current statements inaccurate but Mr. Callejas also admitted during his August 11 deposition that Rialto had never provided an official bring current statement, despite Borrower's requests for the same.  Indeed, he could not identify either bring current statement produced by Plaintiff, and suggested instead that if the documents were in fact prepared by Rialto, they were not official statements and were not provided pursuant to Rialto's standard operating procedures.  On September 17, 2022, after Borrower had been twice forced to request discovery deadlines and five days before the close of discovery, Lender produced a bring current statement, payoff statement, and calculations it asserts demonstrate the same.  Borrower is in the process of examining these documents to determine their completeness and accuracy.

Moreover, Borrower has learned that Lender has not applied payments since the default to the outstanding Loan balance and instead has held the payments made by Borrower in a suspense account.  As such, Plaintiff has been calculating the special servicing fees and default interest on a larger total sum.  These practices have ensured that any delay, even if caused entirely by Rialto or Lender as is the case here, resulted in continued accrual of default interest to Borrower's detriment notwithstanding its attempts to pay off the outstanding balance of the loan.

**Borrower Is Entitled to Recoup Its Costs and Fees.**  Lender's repeated failures to provide an accurate accounting, in addition to the discovery violations and dilatory tactics highlighted above, justify the payment of "reasonable expenses, including attorney's fees" pursuant to Rule 37(b)(2)(C).  *See Aetna Life Ins. Co. v. Licht*, 03 Civ. 6764, 2005 WL 180873 at *1 (S.D.N.Y. Jan. 27, 2005) ("An award of reasonable fees incurred in bringing a motion to compel discovery is the least harsh of all the sanctions allowed under Rule 37.").  Accordingly, Borrower is entitled to an order directing Lender to pay Borrower's reasonable costs and fees associated with bringing this motion and any subsequent Rule 30(b)(6) deposition of Mr. Callejas or another designated witness.

*             *             *

In opposing Borrower's request for leave to file its discovery motion, Lender offers what are, at best, strawman arguments concerning the merits of Borrower's discovery requests, but does not otherwise challenge Borrower's entitlement to the documents at issue.[1]  Further, Lender fails to recognize that Borrower's requests are propounded to discover information relevant to its affirmative defenses and counterclaim.  Plaintiff brought this action, and despite its best efforts to delay and encumber the discovery process—or its curious assertion that the only reason Borrower would seek discovery here is to "unduly burden" Lender—Borrower has always acted in accordance with the Federal Rules and it will continue to do so.

---

[1]  During the meet and confer on September 16, 2022, Lender's counsel expressly acknowledged Borrower's entitlement to the documents at issue, which they now seemingly dispute.  Regardless, Borrower will respond in kind to Lender's arguments in its contemplated motion to compel.

## Plaintiff's Position

Background
This lawsuit arises out of a $81,000,000.00 loan (the "Loan") upon which Borrower indisputably breached by, *inter alia*, failing to remit the monthly debt service payment amount on April 6, 2020 and each month thereafter.  As a result of Borrower's failure to repay the accelerated mortgage debt, Plaintiff commenced this action to, *inter alia*, foreclose the Mortgage and herein seeks damages in the principal amount of $68,295,320.74, plus unpaid interest, late charges, and all other fees, costs and charges provided for in the subject loan documents, in an amount to be determined.

Unsurprisingly, the Answer presents no viable basis to deny Plaintiff judgment as a matter of law on its asserted claims.  Indeed, Borrower does not dispute its default therein but, instead, proffers three (3) boilerplate defenses: (i) Plaintiff's purported failure to satisfy conditions precedent; (ii) Plaintiff's purported failure to mitigate damages; (iii) the doctrine of setoff.  Aware that it possesses no defense to liability, Borrower, undeterred, has resorted to embroiling Plaintiff in a war of discovery concerning items that are either entirely irrelevant to any viable defense, unripe or seemingly designed to harass and unduly burden Plaintiff.  Now, after Plaintiff has, in good faith, voluntarily produced voluminous documentation to which it has objected and Borrower deposed Plaintiff's designee, Borrower seeks leave to file a motion to compel Plaintiff's compliance with its allegedly outstanding discovery obligations (the "Motion").

As more fully set forth below, any further engagement by the Parties in discovery (let alone, motion practice relating to the contemplated Motion) will inure to each parties' detriment as it will provide Borrower with no further defense to foreclosure but, instead, will merely run up costs prior to this Court's ultimate adjudication of damages, which is apparently the only issue in dispute herein. Therefore, the Court should deny Borrower's request for leave to file the Motion.

Of note, the Loan is due to mature in approximately seven weeks, on November 6, 2022.  As more fully set forth below, because Borrower's discovery demands and proposed Motion will do nothing to support either its defenses or counterclaim, it is apparent that Borrower's true motive in pursuing discovery and filing the proposed Motion is to force Plaintiff to acquiesce to a settlement of the default and impending maturity, which is unquestionably not a proper purpose of discovery.

Plaintiff's Purported Failure to Produce Documents
The gravamen of Borrower's contemplated Motion is Plaintiff's purported failure to produce or delayed production of "(i) a 'bring current statement;' (ii) payoff statements for the Loan; and (iii) the information used to calculate the amounts represented in these documents." *See supra* p. 3. Plaintiff expressed and has always maintained a continuing objection to production of such documentation and communications as they are unripe, do not relate to any viable defense, and, therefore, cannot serve as the basis of Borrower's contemplated Motion.

The only defenses in the Answer to which the requested documentation conceivably relates is Borrower's assertion that Plaintiff has failed to mitigate its damages and that Borrower is entitled to a setoff via its Second and Third Affirmative Defenses, respectively.  However, this Court has expressly held that allegations that a foreclosing plaintiff has failed to mitigate damages and seeks an allegedly incorrect amount on the subject loan are *not* defenses to foreclosure. *See CIT Bank, N.A. v. Nwanganga*, 328 F.Supp.3d 189, 199-200 (S.D.N.Y.2018) (holding that "failure to

mitigate damages is not an affirmative defense to a foreclosure action" and that "Defendant's fifth affirmative defense—that the amount sued for and allegedly due is incorrect because Plaintiff failed to apply all of Defendant's payments and credit her for other payments . . . —also fails.").

Consequently, and assuming *arguendo* that Borrower's interpretation of the events surrounding this purported discovery dispute is true but presuming that Plaintiff did produce the requested bring current and payoff statements, and supporting documentation, Borrower would stand in no different of a position as it relates to its defense of this action.  Possession of such information would not better prepare Borrower to oppose a forthcoming motion for summary judgment by Plaintiff because such information has absolutely no bearing on its liability.[2]  Clearly, Borrower's obstinate pursuit of damages-related documentation and related communications relates neither to any of Plaintiff's claims nor any viable defense thereto and, therefore, is an improper use of discovery devices. *See Vaigasi v. Solow Management Corp.*, 11-CV-5088-RMB-HBP, 2016 WL 616386, at *7 (S.D.N.Y. Feb. 16, 2016) (While "[t]he pendency of a lawsuit enables a party to use the tools of discovery to find relevant facts; . . . [d]iscovery may not, however, be used to impose unnecessary burden on an adversary or to seek information that has no or minimal relevance to the claims or defenses[.]").  As the sought-after documentation does not relate to any viable defense, Plaintiff's purported failure to produce them cannot serve as the basis of Borrower's contemplated Motion to compel.

Indeed, by seeking Plaintiff to provide the requested documentation now and prior to the adjudication of liability, Borrower effectively and improperly forces Plaintiff to prematurely prove its damages.  In doing so, Borrower "confuses the order of operations in mortgage foreclosure actions[]" as "[d]isputes over the amount owed 'may be resolved after reference pursuant to RPAPL [§] 1321, and the existence of such a dispute does not preclude the issuance of summary judgment' on the issue of foreclosure." *Windward Bora, LLC v. Allen*, 18-cv-05756-ERK-SMG, 2020 WL 5912392, at *3 (E.D.N.Y. Oct. 6, 2020).  This Court's denial of the requested leave will not deprive Borrower of the opportunity to ultimately challenge the amount claimed by Plaintiff to be due and owing in this action.  Assuming Plaintiff prevails on its forthcoming motion for summary judgment, Plaintiff will thereafter bear the burden of proving such amount upon reference pursuant to RPAPL § 1321.  Furthering Borrower's pursuit of non-relevant, damages-related discovery now will only inure to its own detriment as interest on the Loan will continue to accrue and Plaintiff will continue to incur expenses (including, but not limited to, those relating to discovery and to oppose the contemplated Motion), thereby leading to substantial increases in the amount due and owing.  Therefore, submission to Borrower's hell-bent insistence that Plaintiff prematurely produce damages-related documentation when the amount due and owing is fluid and constantly changing (and will continue to change over time) will disserve judicial economy and yield waste of both party and judicial resources.

While this Court should deny Borrower leave to file the Motion because the requested documentation relates to no viable defense, this Court should also deny it because Plaintiff has manifested an intention to produce such documentation notwithstanding the impropriety and prematurity of Borrower's request therefor.  That is, despite Plaintiff's ongoing objection to Borrower's insistence on the production of damages-related documentation and communication,

---

[2] In turn, Borrower's assertion that Plaintiff's purported failure to produce or delayed production of those documents has "prevented Borrower from receiving information critical to its case" (*see supra* p. 2) is bald and unsupported.

Plaintiff has, in good faith, offered to provide Borrower with such documentation and has undertaken efforts to do so.  Over the course of the last several months, Plaintiff has expended considerable time and expense in preparing and making four (4) separate productions to Borrower, thereby providing it with nearly six thousand (6,000) pages of documentation.  Plaintiff most recently produced documents on Friday, September 16th, and informed Borrower's counsel during the meet-and-confer that an additional production is forthcoming in the coming hours/days.  Moreover, earlier today, Plaintiff circulated a confidentiality agreement to Borrower's counsel in connection with its forthcoming production of additional documentation.  As such, there is nothing herein to evidence a refusal by Plaintiff to comply with its discovery obligations, as is the hallmark of appropriate motions to compel. *See Tri-Star Pictures, Inc. v. Unger*, 171 F.R.D. 94, 100 (S.D.N.Y.1997).

Plaintiff maintains that Borrower should pursue its requests for damages-related discovery during the damages phase of this case, as is appropriate and conventional for foreclosure actions.  However, to the extent the Court finds Borrower's damages-related requests to be ripe at this time, Plaintiff respectfully submits that, rather than granting leave to Borrower to file the contemplated Motion to compel, this Court should instead provide the parties with additional time to complete discovery.[3]  Indeed, the Parties seem to be working in good faith to accomplish this goal on their own volition and without need for judicial intervention and engagement in costly motion practice.

<u>Plaintiff's Purported Failure to Produce A Competent Witness</u>
Borrower also seeks leave to compel Plaintiff to produce a competent witness for an additional deposition and to compel Plaintiff to bear the costs of said, second deposition.

However, Borrower's portion of this joint letter fails to note that Stuart Rich, the previous asset manager at Rialto responsible for the Loan, left Rialto prior to the August 11th deposition.  Rather than seeking to delay the deposition until such time that Mr. Callejas, the new asset manager at Rialto responsible for the Loan, became more familiar with this file and until Plaintiff produced all requested documentation, Borrower, instead, opted to proceed with Mr. Callejas' deposition.[4]  Having failed to do so, Borrower now complains that Mr. Callejas was allegedly unprepared and seeks to depose Mr. Callejas again and have Plaintiff pay for the costs of this second deposition.

Consistent with its prior position, Plaintiff exhibited good faith and offered to produce Mr. Callejas a second time.  However, Borrower presents no viable basis to compel Plaintiff to pay for the costs of said deposition given Borrower's gripes are the result of its own strategic, hurried decision to proceed with the August 11th deposition notwithstanding Mr. Callejas' limited time with the file and notwithstanding the fact that Plaintiff's documentation production was still forthcoming.  Therefore, this Court should deny Borrower leave to file the Motion on this basis as well.

\*          \*          \*

---

[3] Of note, Plaintiff awaits Borrower's compliance with its own discovery obligations, including, but not limited to, production of information and documentation relating an apparent effort by Borrower to conceal $8MM of rents and profits generated by the Property in an attorney escrow account notwithstanding the fact that Borrower assigned title to the aforementioned rents and profits to Plaintiff in the subject loan documents.

[4] Borrower could have also opted to propound a non-party subpoena on Mr. Rich but seemingly did not do so.

The parties are available to appear for a conference before the Court at the Court's convenience. Pursuant to Individual Practice Rule II.C., the undersigned and Keith Brandofino, counsel for Plaintiff conferred telephonically on September 16, 2022, at 3pm, as well as on several other occasions but have not reached an agreement concerning this dispute.[5]

Respectfully submitted,

**DLA PIPER LLP (US)**

*/s/ Michael G. Lewis*

Michael G. Lewis

*Counsel for Defendant Mattone Group
Jamaica Co., LLC*

**HOLLAND & KNIGHT LLP**

*/s/ Keith M. Brandofino*

Keith Brandofino

*Counsel for Plaintiff U.S. Bank National
Association, as Trustee on Behalf of the
Registered Holders of GS Mortgage
Securities Corporation II, Commercial
Mortgage Pass Through Certificates, Series
2012-GCJ9, acting by and through Rialto
Capital Advisors LLC, as Special Servicer*

---

The Court will hold a discovery conference on **October 3, 2022, at 2:00 p.m.**, in Courtroom 20A of the Daniel Patrick Moynihan United States Courthouse. No later than **September 29, 2022**, defendant shall file on the docket of this action, *without argument*: (i) the specific document requests and responses in contention; (ii) defendant's Rule 30(b)(6) deposition notice (including any revisions or correspondence modifying or narrowing the topics); and (iii) the relevant portions of the Callejas deposition transcript. If plaintiff believes defendant's submission is incomplete, it may augment the record, *without argument*, no later than **September 30, 2022**.

Barbara Moses
United States Magistrate Judge
September 26, 2022

---

[5] In accordance with Paragraph II.C of the Court's Individual Practices, the text of this joint letter, while spanning beyond 6 pages, is approximately 6 pages, exclusive of letterhead and signature block.