UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION, *Plaintiff*, -against- MATTONE GROUP JAMAICA CO., LLC, ET AL. *Defendants*. | 1:21-CV-09342 (ALC) **ORDER** |

**ANDREW L. CARTER, JR., District Judge:**

Pending before the Court is Defendant Michael Mattone's Motion to Dismiss (the "Motion") Plaintiff's First Amended Complaint (the "Amended Complaint" or "FAC"). Defendant contends, in brief, that Plaintiff has failed to adequately plead that the Cash Management Default occurred; that the Amended Complaint violates the "one action" rule; and that Plaintiff's failure to comply with RPAPL § 1301(2) compels dismissal of the Amended Complaint against Michael Mattone. The Court disagrees.

Defendant's Motion is **DENIED**.

## BACKGROUND

### I. Factual Background

The Court assumes the parties' familiarity with this case and discusses only those facts necessary to support the Court's conclusion. The facts in this section are taken from the First Amended Complaint and its incorporated documents. The facts are assumed to be true for purposes of the Motion to Dismiss.

In 2012, Defendant Mattone Group Jamaica Co. ("Borrower") entered into a Loan Agreement with Jefferies Loan Core LLC ("Original Lender"), under which Borrower received a

loan in the original principal amount of $81,000,000.00. FAC ¶ 19. In addition to the Loan Agreement, Borrower and Original Lender executed a Clearing Account Agreement ("CAA") with HSBC Bank USA. Dkt. 241-2. Defendants Michael Mattone ("Defendant M. Mattone") and Carl Mattone ("Defendant C. Mattone") (collectively, "Guarantors" or "Guarantee Defendants") executed a Guaranty of Recourse Obligations (the "Guaranty") in favor of Original Lender. Dkt. 241-4. Original Lender's interest in the loan and the related agreements was eventually assigned to U.S. Bank National Association ("Plaintiff" or "Lender"), at which point all monthly payments under the Note were due to Plaintiff. FAC ¶ 43.

Borrower failed to make Monthly Debt Service Payments as due in May, June, July, August, September, and October 2020. FAC ¶ 51. Plaintiff provided Borrower with a Notice of Default. FAC ¶ 54. As a consequence, Plaintiff accelerated the debt and demanded payment of all sums due under the Loan Agreement. FAC ¶ 56. Neither Borrower nor Guarantors have satisfied the debt. FAC ¶ 57.

Plaintiff alleges three forms of default by the Borrower, all arising under Loan Agreement § 8.1: (1) failure to make Monthly Debt Service payments on the Debt when due, see FAC ¶ 51 (the "Payment Defaults"); (2) failure to pay the entire indebtness once Lender accelerated the debt, see FAC ¶¶ 58-59 (the "Maturity Default"); and (3) failure to comply with the Cash Management provisions in Loan Agreement § 3.11, see FAC ¶¶ 62-65 (the "Cash Management Default"). Plaintiff further alleges that Defendant M. Mattone, as Guarantor, defaulted on the Guaranty, which requires "full, prompt, and complete payment when due of the Guaranteed Obligations." Guaranty § 2(a). The Guaranty defines the "Guaranteed Obligations" as "payment of all Debt as and when the same is due in accordance with the Loan Documents." Id. § 1(b).

## II. Procedural Background

Plaintiff brought this action against Borrower in 2021 seeking foreclosure. Dkt. 1. Plaintiff's parallel action against Guarantors (the "Guarantor Action") was dismissed as a violation of New York Real Property Actions and Proceedings Law § 1301(3). *See* 23-cv-11035 Dkt. 71 (Order Adopting Magistrate Report and Recommendation recommending dismissal). On March 11, 2025, Plaintiff amended their complaint to add allegations and counts similar to those asserted in the Guarantor Action. *See* Dkt. 187, at 21-22.

On February 10, 2026, Defendant Michael Mattone moved to dismiss the First Amended Complaint. Dkt. 239-41. Plaintiffs filed their opposition and supporting papers on February 24, 2026. Dkt. 242-43. Defendant filed a reply on March 3, 2026. Dkt. 244. The Motion is fully briefed.

## STANDARD OF REVIEW

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully," and accordingly, where the plaintiff alleges facts that are "'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In considering a motion to dismiss pursuant to Rule 12(b)(6), courts accept as true all

factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008). However, the court need not credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007)). Instead, the complaint must provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*, 507 F.3d 117, 121 (2d Cir. 2007) (citing *Twombly*, 550 U.S. at 555). In addition to the factual allegations in the complaint, the court may consider "the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010) (citation and internal quotation marks omitted). The court must treat the facts contained in plaintiff's complaint as true, resolving any factual disputes in favor of the plaintiff.

## DISCUSSION

### I. Plaintiff Adequately Alleges That A Cash Management Period Commenced Under the Loan Agreement

Plaintiff alleges that Borrower breached the Loan Agreement by not complying with Loan Agreement § 3.11, which specifically provides that "[i]f a Cash Management Period shall have commenced, then…all Available Cash shall be Paid to Lender, which amounts shall be transferred by Lender into a Subaccount [] as cash collateral for the debt." Article I of the Loan agreement states that a Cash Management Period occurs when "an Event of Default has occurred and is continuing," and ends when all "Event[s] of Default ha[ve] been cured." Defendant M. Mattone does not dispute that an Event of Default occurred and argues only that Plaintiff "Fails to Allege a Default under Section 3.11 of the Loan Agreement." Dkt. 240 at 16. The Court finds

that Plaintiff has plausibly and adequately alleged the occurrence of the Payment Defaults and Maturity Default through its allegations at FAC ¶¶ 51, 57-59.

Defendant M. Mattone protests that a Cash Management Period had not begun because the CAA defines a Cash Management Period as "each period commencing upon the giving by Lender of its designee to the Clearing Bank of a notice stating that a Cash Management Period has commenced under the Loan Agreement." *See* ECF No. 240, at 12; CAA § 13(b). Borrower assumes, incorrectly, that the Cash Management Period under the Loan Agreement must necessarily be identical to the Cash Management Period under the Loan Agreement. This is not so. Indeed, the CAA appears to contemplate the "Cash Management Period under the Loan Agreement" may precede such a Cash Management Period arising under the CAA.

The Loan Agreement concerns only the rights and duties of the Plaintiff and Borrower during a Cash Management Period. Those rights and duties are automatically triggered when an Event of Default occurs. If and when the Lender notifies the Clearing Bank that a Cash Management Period (as defined by the Loan Agreement) has commenced, the Clearing Bank's duties will arise; namely, the Clearing Bank is required to "disburse all amounts that are then in the Clearing Account by wire transfer…to the Deposit Account at the Deposit Bank." *See* CAA § 1(c)(ii).

M. Mattone asks the Court to read the "Cash Management Period" under the Loan Agreement to be the same as the "Cash Management Period" under the CAA. By doing so, Borrower invites conflict into the agreements. The Court declines to find such a conflict and instead reads the agreements harmoniously. Upon the occurrence of an Event of Default, a "Cash Management Period" under the Loan Agreement automatically begins. At that point, the Borrower, and the Borrower alone, is required to remit "all Available Cash" to the Lender. If the

Lender notifies the Clearing Bank that such an Event of Default—and the consequent Cash Management Period under the Loan Agreement—has occurred, then the Clearing Bank's duties are triggered. Until such notice is given, it is the Borrower's responsibility to remit the payments, not the Clearing Bank's.

## II. Defendant Was Required to Deposit the Available Cash into the Deposit Account

Borrower argues that it is unable to deposit the Available Cash "directly" into the Deposit Account. ECF No. 240 at 15. As support, Borrower cites to the Loan Agreement, which notes that "all Rents received by Borrower or Manager shall be deposited into the Clearing Account." Loan Agreement at § 3.1. Borrower's reading of the Loan Agreement is correct, though incomplete. The CAA expressly notes that "During any period other than a Cash Management Period (*as defined in Section 13 [of the CAA]*), the Clearing Bank shall, on a daily basis, transfer funds…to the operating account of Borrower*…or as Borrower may otherwise direct by written notice to the Clearing Bank*." CAA § 1(c)(i) (emphasis added).

The Complaint does not allege that Borrower was required to "directly" deposit the Available Cash. This, of course, would not be permitted by the Agreements under any circumstance. Borrower was, however, plainly able to direct the Clearing Bank to deposit the funds into the Lender's Deposit Account. Moreover, Borrower was required to do so because a Cash Management Period (as defined under the Loan Agreement) had begun.

## III. Plaintiff Adequately Alleges that Borrower Was Required to Turn Over Gross Revenues

The Loan Agreement states that the Lender may:

> enforce the liability and obligation of the Borrower, by money judgment or otherwise, to the extent of any loss, damage, cost, expense, liability, claim or

> other obligation incurred by Lender. . .arising out of or in connection with the following:
>
> (f) misappropriation or conversion by or on behalf of Borrower (*including failure to turn over to Lender on demand following an Event of Default*) any gross revenues…

Loan Agreement § 10.1 (emphasis added). Defendant Mattone argues that because Plaintiff does not adequately plead that a Cash Management Period under Loan Agreement § 3.11 ever began, they have consequently not adequately plead that the gross revenues (in the form of Available Cash) were due to Lender. This argument fails, as the Court has found that Plaintiff has made the required showing.

Defendant Mattone's related argument that Plaintiff's allegations regarding an alleged "attorney escrow account" fail to state a claim has no force. His argument that "Lender cannot adequately allege that Mattone Group 'misappropriated and converted' rents solely with conclusory statements" confuses the issue. *See* Dkt. 240 at 17. Borrower's "misappropriation or conversion" as contemplated in the Loan Agreement was the failure to pay the gross revenue to Lender, not what may have occurred with the gross revenue instead. *See* FAC ¶ 65 ("Borrower's own documents demonstrate that Borrower and Guarantors have misappropriated and converted nearly $17,000,000.00 in rents generated by the Premises following Borrower's failure to pay debt service beginning in May 2020").

### IV. The Complaint Does Not Violate the One Action Rule

Defendant M. Mattone argues that the request for money judgment from him "violates New York's one action rule." Dkt. [Opp.] at 18. RPAPL § 1301(3), sometimes called the "one action rule" states that when a foreclosure action is pending, "no other action shall be commenced or maintained to recover any part of the mortgage debt." *See also Letchworth Realty, LLC v. LLHC Realty, LLC*, 2020 WL 5361666, at *1 (E.D.N.Y. 2020) ("The purpose of

RPAPL § 1301 is to avoid multiple suits to recover the same mortgage debt and confine the proceedings to collect the mortgage debt to one court and one action.") (cleaned up). However, consistent with the one action rule, the Lender may seek a deficiency judgment against a Guarantor in the same action where it seeks mortgage debt. *Id*., at *3 ("New York law required the Lender to include the Guarantors in the foreclosure action if it wanted a deficiency judgment against them.").

Contrary to Defendant's arguments, Plaintiff seeks a deficiency judgment against Guarantors. *See* FAC ¶ 72 ("Guarantors are adjudged to pay the whole residue or so much thereof as the Court may determine to be just and equitable, of the Debt remaining unsatisfied after the sale of the Premises and the application of the proceeds pursuant to the provision contained in such judgment"). Plaintiff is undoubtedly permitted to request a deficiency judgment in the same action where they seek foreclosure. *See Aurora Loan Servs., LLC v. Lopa*, 88 A.D.3d 929, 930 (2nd Dep't 2011).

Defendant advances a separate argument that Plaintiff may not seek a "full and separate" money judgment of any kind against Guarantors. *See* Dkt. 240, at 19. The alleged "money judgment" appears to be a supposed "amount due" from Guarantors "pursuant to the Guaranty and any other applicable Loan Documents." FAC, at 22. This "amount due" pertains to the "costs, charges, and expenses including reasonable attorneys' fees and disbursements, incurred by Plaintiff in enforcing the covenants, agreements, obligations and liabilities of Guarantors under the Guaranty." FAC ¶ 99. Defendant does not provide any support for the proposition that Plaintiff may not seek costs for enforcement of its contractual rights in the same proceeding as a foreclosure action. *See Gizzi v. Hall*, 309 A.D.2d 1140, 1142 (N.Y. App. Div. 2003) ("Defendants are entitled to counsel fees related to their counterclaims to enforce their rights

under the note"). To the extent that such costs are independent of any mortgage debt, the fourth count of the First Amended Complaint survives the Motion to Dismiss.

### V. The First Amended Complaint's RPAPL § 1301(2) Defect Does Not Require Dismissal

RPAPL § 1301(2) requires a complaint for mortgage debt to "state whether any other action has been brought to recover any part of the mortgage debt, and, if so, whether any part has been collected. The First Amended Complaint incorrectly states that "Plaintiff has brought no other action or proceeding to recover any part of the mortgage indebtedness herein described." FAC ¶ 101.

The Court is permitted to excuse errors in its discretion. *See Phoenix Global Ventures, LLC v. Phoenix Hotel Assocs., Ltd.*, 422 F.3d 72, 76 (2d Cir. 2005); N.Y. C.P.L.R. § 2001 ("if a substantial right of a party is not prejudiced, the mistake, omission, defect or irregularity shall be disregarded"). Because neither party is prejudiced by the error, and dismissal of the action would be unjust, the Court denies M. Mattone's motion to dismiss, though it grants Plaintiff leave to amend the complaint if they so wish. *See De Santis v. City of New York*, 2011 WL 4005331, at *5 (S.D.N.Y. 2011) ("Because both the law of this Circuit…and New York law, *see* N.Y. C.P.L.R. § 2001, permit a court to disregard errors or mistakes in filing where permitting those errors to stand would work a substantial injustice to one of the parties, we will disregard the erro[r]").

## CONCLUSION

Defendant's Motion to Dismiss is **DENIED**. Defendant Michael Mattone is directed to answer the First Amended Complaint within 14 days of the entry of this Order.

The Clerk of Court is respectfully directed to terminate the motion at ECF No. 239.

**SO ORDERED.**

**Dated:** **July 14, 2026**
**New York, New York**

**ANDREW L. CARTER, JR.**
**United States District Judge**